**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: September 17 2007**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 07-32371 |
| | ) | |
| Anna M. Lewis, | ) | Chapter 7 |
| Dwayne A. Lewis, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION

This case is before the court on the United States Trustee's motion to dismiss for abuse brought under 11 U.S.C. § 707(b)(2) and (b)(3) [Doc. # 22] and Debtors' response [Doc. # 28]. A hearing was held that Debtors, their counsel and counsel for the United States Trustee ("UST") attended in person and at which the parties had the opportunity to present testimony and evidence in support of their positions.

The court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district. *See* 28 U.S.C. § 157(a) and (b)(1). Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A). Having considered the briefs and the arguments of counsel as well as testimony and evidence offered by the parties, for the reasons that follow, the court will grant the UST's motion and dismiss Debtors' Chapter 7 case.

### BACKGROUND

Debtors are married and have one dependent son. [Doc. #1, Schedule I]. On June 4, 2007, they filed a joint petition for relief under Chapter 7 of the Bankruptcy Code, listing primarily consumer debts. On

their bankruptcy Schedule I, Debtors indicate that Dwayne Lewis' payroll deductions include $426.92 for repayment of 401(k) plan loans.

As required under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Debtors also completed and filed with their petition Official Form B22A, Statement of Current Monthly Income and Means Test Calculation. 11 U.S.C. § 707(b)(2)(C). They report total current monthly income ("CMI"), as that term is defined in 11 U.S.C. § 101(10A), in the amount of $7,822.34, which is above the median family income for a family of three in Ohio. Debtors' means test calculation involves deductions totaling $7,705.07. Their total deductions include deductions for 401(k) plan loan repayments on line 42 in the amount of $198.80 as "[f]uture payments on secured claims" and on line 43 in the amount of $204.45 as "[o]ther payments on secured claims." [Doc. # 32, Form B22A, p. 5]. Dwayne Lewis testified that the 401(k) plan loans are secured only by assets of his 401(k) plan. Debtors report monthly disposable income in the amount of $117.27 and 60-month disposable income in the amount of $7,036.20, which is less than twenty-five percent of their scheduled total non-priority unsecured debt. They, therefore, indicate that a presumption of abuse under § 707(b)(2) does not arise.

The United States Trustee ("UST") disagrees. UST argues that Debtors' deduction in the total amount of $403.25 on account of 401(k) plan loan repayments is improper as such payments are not on account of secured claims as contemplated under the means test. Although the UST also argues under § 707(b)(3) that the totality of the circumstances of Debtors' financial situation demonstrates abuse, because the court agrees that a presumption of abuse arises in this case, it does not address the § 707(b)(3) argument.

## LAW AND ANALYSIS

As amended by BAPCPA, § 707(b)(1) provides that the court, after notice and a hearing, "may dismiss a case filed by an individual debtor under [Chapter 7] whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." Under § 707(b)(2) and (3), Congress provided two methods by which a party may prove abuse. Section 707(b)(2)(A) sets forth an extensive "means test" calculation to determine whether there is a presumption of abuse. The means test calculation requires a debtor to subtract certain allowed deductions from the debtor's CMI. A presumption of abuse exists if the resulting amount, multiplied by sixty, is not less than the lesser of

> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
> (II) $10,000.

11 U.S.C. § 707(b)(2)(A)(i). Where the means test calculation results in sufficient disposable income such

2

that a presumption of abuse arises, a debtor may rebut that presumption by demonstrating "special circumstances" as set forth in § 707(b)(2)(B).

In this case, the narrow issue before the court is whether Debtors' 401(k) plan loan repayments are proper deductions as payments "on account of secured debts" under § 707(b)(2)(A)(iii). That subsection provides as follows:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of--
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii).

The issue presented in this case was squarely addressed in *Eisen v. Thompson*, 370 B.R. 762 (N.D. Ohio 2007). In *Thompson*, the court reversed the bankruptcy court's order finding that the debtors' 401(k) loan was a secured debt under the means test calculation. The court considered the definitions of "debt," which is defined as "liability on a claim," 11 U.S.C. § 101(12), and "claim," which is defined as a "right to payment," 11 U.S.C. § 101(5). *Id.* at 768. Reading the terms coextensively as courts have long so held, the court determined that a loan constitutes a debt under the Bankruptcy Code only if the creditor has a claim for repayment. *Id.* Because the administrator of a 401(k) plan has no claim for repayment against the debtor or property of the estate, the court concluded that the 401(k) plan loan was not a "debt" under the Bankruptcy Code. The court explained:

> Retirement plan loans are qualitatively different than secured debts such as home mortgages and car loans. The retirement plan administrator does not loan the plan participant the administrator's money. It simply deducts the requested loan amount from the participant's own account, and credits the loan payments and interest back to the participant's account. If the participant defaults on the loan, the plan administrator deducts the amount owed from the vested account balance, and repays the loan with this deduction. The participant must treat this deduction as a distribution which is taxable as income to the participant in the default year. The participant may also be subject to an early withdrawal penalty. But, the plan administrator has no right to payment under the Bankruptcy Code.

*Id.* at 768 n.10.

3

The *Thompson* court's holding is consistent with the Sixth Circuit's holding in *Mullen v. United States*, 696 F.2d 470 (6th Cir. 1983). In *Mullen,* the United States Air Force ("USAF") was withholding payment of a Chapter 7 debtor's retirement benefits because the debtor had failed to repay an adjustment allowance he had received prior to his retirement. *Id.* at 471. The issue before the court was whether the USAF had violated the automatic stay by collecting a claim against the debtor. *Id.* The USAF argued that it was merely recouping prepaid retirement benefits. The court relied on the legislative history regarding the definition of "debt" and "claim," explaining that those terms "will not include a transaction such as a policy loan on an insurance policy" since "the debtor is not liable to the insurance company for repayment; the amount owed is merely available to the company for setoff against any benefits that become payable under the policy." The court then found that "[l]ike the terms of a loan on an insurance policy, the USAF has the right to setoff benefits that have already been paid against benefits that become payable." *Id.* at 472. Thus, the court concluded that the transaction at issue did not give rise to a creditor-debtor relationship between the USAF and the debtor and that the USAF did not violate the automatic stay as it was not collecting a "claim" against the debtor. *Id.* (citing *Villarie v. New York City Employee's Ret. Sys.*, 648 F.2d 810 (2d Cir. 1981) (holding that an advance from an employee retirement system does not create a debt dischargeable in bankruptcy)); *see also In re Esquivel*, 239 B.R. 146 (Bankr. E.D. Mich. 1999) (holding that prepetition borrowing from debtor's ERISA retirement account did not give rise to secured debt under the Bankruptcy Code); *In re Scott*, 142 B.R. 126 (E.D. Va. 1992) (finding no debt existed between Chapter 13 debtor and ERISA pension plan as a result of debtor's borrowing funds from the plan).

Based on the reasoning in *Thompson* and *Mullen*, the court concludes that Dwayne Lewis' borrowing against his 401(k) plan did not create a creditor-debtor relationship with the plan administrator and, therefore, is not a secured debt within the meaning of § 707(b)(2)(A)(iii). Accordingly, Debtors' 401(k) plan loan repayments may not be deducted from CMI as payments on account of secured claims under the means test. Excluding the repayments as an allowable expense under Debtors' means test calculation, they have monthly disposable income under § 707(b)(2) in the amount of $520.52 and 60-month disposable income in the amount of $31,231.20. In light of these calculations, pursuant to § 707(b)(2)(A)(i), there is a presumption that granting Debtors a discharge would be an abuse of the provisions of Chapter 7. Debtors have not demonstrated, or even argued, that special circumstances exist that rebut that presumption.

Debtors are hereby permitted through and including October 18, 2007, either to file a motion to voluntarily dismiss this Chapter 7 case, *see* Fed. R. Bankr. P. 1017(a), as they raised at the hearing or to convert their case to Chapter 13. If they do not act in that time, the court will enter a separate order in

4

accordance with this Memorandum of Decision granting the motion to dismiss and dismissing this case without prejudice.